UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| JAJCO, INC., dba ANCHOR DRUGS PHARMACY,<br><br>Plaintiff,<br><br>v.<br><br>LEADER DRUG STORES, INC., et al.,<br><br>Defendants.<br>_____/ | No. C 12-05703 WHO (LB)<br><br>**DISCOVERY ORDER FOLLOWING DISCOVERY CASE MANAGEMENT CONFERENCE** |

The court held an informal discovery case management conference on September 13, 2013. The court previously ordered certain discovery. *See* 8/6/13 Order, ECF No. 1. The issue at the case management conference generally was about how to comply with that order. This order memorializes the court's orders at the case management conference. The deadline for complying with numbers 1 through 5 below is one week from the date of this order. If that proves burdensome, the parties must notify the court within one week and include their proposals for a reasonable time period.

1. On August 6, 2013, the court ordered disclosure of financial information regarding Catamaran's current financial information and net worth. *See* ECF No. 61 at 4. Catamaran disclosed its 10-K for the Catamaran holding company, which reports consolidated financials and references affiliated entities but does not break out financials for its affiliates or subsidiaries. The court's previous order was for disclosure of financial information about the Catamaran parties in the

case: Catamaran Inc. and Catamaran PBM of Illinois. That remains the order. The consolidated financial disclosure, which does not provide the financials for Catamaran Inc. and Catamaran PBM of Illinois, is not sufficient. Disclosure on the entity level not only is the court's order but also facilitates settlement and narrows the financial universe for Catamaran. It is not a burden: the 10-K process necessarily includes an import of the financial information into the global spreadsheets that comprise the consolidated financials and should be obtainable easily from the person who processes and prepares the financials for the 10-K, 10-Q, and other SEC filings. The parties agreed that the information will be produced pursuant to the Northern District's standard protective order, which the undersigned attaches to this order for easy reference.

2. Catamaran already agreed to produce the organizational chart discussed at the Rule 30(b)(6) deposition of the CFO. The court orders it.

3. The court previously ordered, and Catamaran said that it produced, the contracts at issue in the lawsuit. Leader produced more (apparently documents referenced in the contract and claims manuals). The issue is the sufficiency of Catamaran's verified response to Anchor's RFP. In other contexts (such as in a deposition or in informal responses by counsel), Catamaran told Anchor that it produced all it had. Anchor still is entitled to an amended verified response. Catamaran will amend its response. The same is true about the response to RFPs 32 and 33 regarding Board of Directors' minutes and agendas regarding the claims, payments, and recoupments at issue in the case. *See* 8/6/13 Order, ECF No. 61 at 4. Catamaran needs a verified response that there is no responsive information.

4. Anchor will provide Catamaran the bates numbers for the claims data that it produced (apparently in native format).

5. The parties will circulate a list of their remaining witnesses that they need to depose. This will allow the lawyers to work with the clients to identify their schedules if the case does not settle later this month. That will avoid the scheduling meltdown that happened this past summer, and it will make it easier on everyone (clients and lawyers).

6. Going forward, the parties may employ an informal process (as opposed to filing a motion) to challenge designations under the protective order. This will save the clients time and money.

C 12-05703 WHO (LB)
ORDER

2

7. The parties discussed issues with production of discovery, particularly electronically-stored information ("ESI"). The parties agree, and the court orders, that future document productions will include an identification of the bates range tied to the category of production (such as the RFP). As to form-of-production issues for ESI, it is too late for whatever has been produced already (such as the 2000-page Adobe pdf without document breaks). For whatever future productions remain, the undersigned encourages the parties to talk with each other before production to avoid issues. For example, all parties need to OCR and insert document breaks in 2000-page pdfs. Adobe Pro can bates stamp documents, and those bates numbers can be exported to a spread sheet. Everyone needs information in this type of readable and manipulable format. If the producing side does it, then the receiving party does not have to re-do it, the clients save money, and the law firms do not replicate work unnecessarily.

8. Anchor may not file any motion for sanctions until after the settlement conference. If the case does not settle, the parties must schedule a telephonic case management conference with the undersigned to discuss the timing of the motion and a briefing schedule. The court's approach is to manage discovery first and address sanctions later. Nothing about this approach operates as a waiver of anything by the parties. The court's orders should not be construed as saying anything about whether any behavior is sanctionable.

9. Counsel must provide a copy of this order to the clients.

**IT IS SO ORDERED.**

Dated: September 13, 2013

LAUREL BEELER
United States Magistrate Judge